**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

KIRBY B. B.,[1]

      Plaintiff,

          v.                                    Civil Action No. 2:22-cv-115

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION

This is an action seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying the application of Kirby B. B. ("Plaintiff") for disability insurance benefits under the Social Security Act. On April 25, 2023, Magistrate Judge Robert J. Krask issued a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment recommending that the Court grant the Commissioner's Motion for Summary Judgment and deny the Plaintiff's Motion for Summary Judgment. R&R, ECF No. 15.

Plaintiff objects to the R&R on two grounds, both of which are related to the ALJ's consideration of a medical opinion offered by Dr. Lloyd Kellam, Plaintiff's cardiologist. First, she argues that the Magistrate Judge erred in finding that the ALJ adequately considered the supportability of Dr. Kellam's opinion, by providing *post-hoc* rationalizations that were not present in the ALJ's opinion. Pl.'s Obj. at 1–2, ECF No. 16. Second, Plaintiff contends that the

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Magistrate Judge made legal errors in analyzing the ALJ's consistency analysis by discussing Dr. Kellam's own records and ignoring evidence that her symptoms had not improved. *Id.* at 2–4. For the reasons below, the Court will adopt the R&R and overrule Plaintiff's objections.

## I.    PROCEDURAL HISTORY

On February 7, 2020, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 1, 2019. R. 15. Plaintiff's claim was denied both initially and on reconsideration. R. 68–82, 85–96. On March 22, 2021, the Administrative Law Judge ("ALJ") held a hearing in which Plaintiff and a vocational expert testified. R. 35–67. The ALJ determined that Plaintiff was not disabled, and Plaintiff appealed the decision to the Appeals Council. R. 1–5, 28–29. On January 14, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. 1–5. Thus, the ALJ's decision is the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 404.981.

On March 11, 2022, Plaintiff filed a complaint in this Court, appealing the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Compl., ECF No. 1. The Court referred the matter to a Magistrate Judge for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B). Order, ECF No. 8. The parties filed cross-motions for summary judgment. Mots. for Summ. J., ECF Nos. 10, 12. Upon review, the Magistrate Judge recommended that the Court deny the Plaintiff's Motion for Summary Judgment and grant the Commissioner's Motion for Summary Judgment. R&R at 1, 33. Plaintiff timely objected to the R&R, to which the Commissioner responded. Pl.'s Obj., ECF No. 16; Def.'s Resp., ECF No. 17.

## II.    STANDARD OF REVIEW

This Court reviews *de novo* any part of the Report and Recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court "may accept,

reject, or modify, in whole or in part," the Magistrate Judge's recommended disposition. 28 U.S.C.§ 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

This Court will uphold an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Substantial evidence thus requires "more than a mere scintilla of evidence but may be less than a preponderance" of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). Between these two evidentiary thresholds lies a "zone of choice" wherein the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

## III.    BACKGROUND

### A. Applicable Standard for Reviewing Medical Opinions

As explained by the Magistrate Judge in the R&R, the Social Security Administration revised its rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5853–55 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132 (Mar. 27, 2017) (correcting technical errors in the rule). Because Plaintiff filed her disability application in 2020, the new rules, specifically 20 C.F.R. § 404.1520c, govern how the ALJ is required to

consider medical opinions. Under these rules, the ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to consider a medical opinion's overall "persuasiveness." *Id.* In conducting this analysis, the "most important factors" are "supportability" and "consistency." *Id.* The ALJ must explain how he considered these factors in his analysis. *Id.* "Supportability" means the extent to which a medical source's opinion is supported by relevant "objective medical evidence" and the source's "supporting explanations." *Id.* § 404.1520(c)(1). "Consistency" means the extent to which the opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Additional factors include the medical source's relationship with the claimant, specialization, and other factors such as the source's familiarity with other medical evidence and the Social Security Administration's policies and requirements. *Id.* §§ 404.1520c(a), (c). The ALJ may, but is not required to, address how he considered these additional factors in his analysis. *Id.* § 404.1520c(b)(2).

The ALJ's analysis "must build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (explaining the "assessment must include a narrative discussion describing how the evidence supports each conclusion" (quoting Social Security Ruling 96–8p)). The ALJ need not use "'particular language' or adhere[] to any 'particular format' in a decision, so long as the ALJ reasonably articulates her decision such that a reviewing court can 'trace the path of the adjudicator's reasoning.'" *Boyd v. Kijakazi*, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (quoting *Todd A. v. Kijakazi*, No. 3:20CV594, 2021 WL 5348668, at *5 (E.D. Va. Nov.

16, 2021)). Thus, the ALJ need not specifically use the terms "supportability" and "consistency," as long as he adequately analyzes those factors. *Todd A.*, 2021 WL 5348668, at \*5. However, the ALJ must consider "all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

## B. Dr. Kellam's Medical Opinion

The Magistrate Judge's R&R thoroughly details the Plaintiff's treatment history and the opinions of medical experts, and this Court adopts that description as its Statement of Facts. R&R at 2–20. The most pertinent portions of that history are summarized here. Because the Plaintiff's objections focus on the ALJ's consideration of Dr. Kellam's medical opinion, this summary focuses primarily on Plaintiff's treatment history with Dr. Kellam and Dr. Kellam's medical evaluation report.

### 1. The Plaintiff's Medical History

Plaintiff suffers from congenital heart disease with a history of stroke, seizure, migraines, obesity, and anxiety. *See, e.g.*, R. 247, 313, 314, 716; *see also* R. 18. The ALJ found that these conditions significantly limit Plaintiff's ability to perform basic work activities. R. 18.

With respect to her heart condition, prior to being treated by Dr. Kellam, Plaintiff had been diagnosed with a congenital heart defect called Ebstein's anomaly[2] and a patent foramen ovale (a small hole between the heart's right and left atria), which was successfully closed. R. 477, 545,

---

[2]    Ebstein's anomaly is a congenital heart defect in which the tricuspid valve is malformed. *Ebstein's Anomaly (Adults)*, Cleveland Clinic (Oct. 7, 2022), https://my.clevelandclinic.org/health/diseases/16946-ebsteins-anomaly-for-adults.

547, 725–26. The Plaintiff has shown signs of Wolff-Parkinson-White syndrome,[3] and an implanted heart monitor has detected incidents of tachycardia (irregularly fast heartbeat). R. 488–92, 716, 720, 729. The Plaintiff has also undergone catheter procedures, including cardiac catheterization and ablation, to address her heart problems. R. 716, 726.

In November 2017, the Plaintiff suffered a stroke while undergoing treatment for post-birth complications. R. 247, 263. She underwent a procedure that successfully removed a clot from a branch of her cerebral artery and "had a complete neurologic recovery." R. 247; *see also* R. 248, 255, 260, 263. In 2021, Plaintiff also went to the emergency room exhibiting stroke-like symptoms, but they resolved within twenty-four hours.[4] R. 670–71, 679.

The Plaintiff began to experience migraines more regularly after her stroke in 2017. R. 302. When she sought treatment for her headaches, her doctors indicated that her symptoms could be partially explained by the overuse of pain relievers and by lifestyle factors, such as stress and poor sleep. R. 281, 302, 313, 664. They prescribed Aimovig treatments, which significantly improved the severity of her headaches. R. 270–71, 279, 664. Nonetheless, she continued to experience daily headaches, and greater occipital nerve block treatments did not provide additional relief. R. 654–55.

---

[3]     Wolff-Parkinson-White syndrome involves an "extra signaling pathway between the heart's upper and lower chambers," which can cause tachycardia. *Wolff-Parkinson-White (WPW) Syndrome*, Mayo Clinic (Apr. 30, 2022), https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626.

[4]     This type of incident is known as a transient ischemic attack, which consists of stroke-like symptoms that may last up to twenty-four hours. *Transient Ischemic Attack (TIA)*, Mayo Clinic (Mar. 26, 2022), https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679.

*2. The Plaintiff's Treatment History with Dr. Kellam*

The Plaintiff began her treatment with cardiologist Dr. Kellam around 2018. R. 544. The Plaintiff initially visited Dr. Kellam complaining of chest pain. R. 545. Finding her electrocardiogram results "unremarkable," he concluded that her chest pain may be due to anxiety, not pulmonary issues. R. 547. Similarly, in April 2019, Plaintiff visited the emergency room out of concern that she had congestive heart failure due to symptoms of chest pain and shortness of breaths and was seen by a few providers including Dr. Kellam. R. 499, 501–503. Though Dr. Kellam was "concerned," he did not recommend any medications and told her to follow up in a few days. R. 502.

Later in 2019, the Plaintiff underwent a cardiac catheterization procedure,[5] and Dr. Kellam described her results as "favorable." R. 494. The procedure found "stable right heart pressures, decent cardiac output, and angiographically normal coronary arteries," and an echocardiogram showed "stable tricuspid regurgitation." *Id.* Her physical exam showed mostly normal cardiovascular, neurological, and psychiatric results, though the Plaintiff continued to report shortness of breath on exertion, depression, and anxiety. R. 496–97. Overall, Dr. Kellam concluded that "she [was] doing relatively well." R. 497.

Dr. Kellam referred Plaintiff for implantation of a heart monitor to assess whether she had any problems with her heart's rhythm that could explain some of her ongoing symptoms. R. 494. The heart monitor was implanted a few days later. R. 488–92. At Plaintiff's follow-up

---

[5]     A cardiac catheterization is a procedure that can be used to diagnose and treat various heart conditions, which is performed by inserting a thin tube into a blood vessel and guiding it to the heart. *Cardiac Catheterization*, Cleveland Clinic (Apr. 29, 2022), https://my.clevelandclinic.org/health/diagnostics/16832-cardiac-catheterization.

appointment, Dr. Kellam reviewed the data from the heart monitor and found "no significant arrhythmias." R. 485.

The Plaintiff again visited Dr. Kellam in February 2020, complaining of fatigue and shortness of breath on exertion. R. 477–80. Finding no major issues, Dr. Kellam referred Plaintiff to a congenital heart specialist to evaluate whether her heart condition could be causing her ongoing problems with shortness of breath. R. 481–82. The specialist found that the Plaintiff's Ebstein's anomaly was "very mild" and presented "no major functional impairment," her "[patent foramen ovale] was adequately closed," and "she did not have any active arrhythmias in need of intervention." R. 725.

At the Plaintiff's next visit in November 2020, Dr. Kellam observed that "[s]he has done well with her general circumstances with only mild [shortness of breath] on exertion" and "has had no further strokes or [transient ischemic attacks]." *Id.* He described her anxiety as "well controlled." *Id.* Plaintiff's heart monitor showed a few episodes of sinus tachycardia,[6] but there was "[n]o evidence of infection or other ominous findings." R. 729.

At the Plaintiff's next visit in February 2021—just three days before Dr. Kellam issued his medical evaluation report—the doctor made similar findings. R. 716–24. Dr. Kellam described Plaintiff's cardiovascular symptoms as "[m]ild . . . at present," and he found that she had "plenty of [shortness of breath] on exertion" and occasional heart palpitations, but "none that [are] disabling." R. 719. Her physical examination resulted in mostly normal findings, with "some bogginess around the ankles but no severe edema" and "[m]oderate anxiety." R. 720. On reviewing Plaintiff's heart monitor data, Dr. Kellam found some tachycardia, but "nothing ominous," with

---

[6]     Sinus tachycardia is an episode in which your heart beats faster than 100 beats per minute. *Sinus       Tachycardia*,       Cleveland       Clinic       (June       5,       2022), https://my.clevelandclinic.org/health/diseases/23210-sinus-tachycardia.

no episodes lasting more than ten minutes, and he noted that her heart rhythm was controlled with medication. R. 716, 720. He commented that "[s]he has done well overall," R. 716, and scheduled Plaintiff for a follow-up appointment in six months, R. 714.

*3. Dr. Kellam's Medical Evaluation Report*

Dr. Kellam completed a medical evaluation report on February 7, 2021. R. 709–11. In the report, Dr. Kellam noted Plaintiff's diagnoses of Ebstein's anomaly, multiple supraventricular tachycardia events,[7] and history of stroke. R. 709. In support of his findings, detailed below, Dr. Kellam failed to provide any supporting explanation, writing simply that his "prior workups" were "[t]oo numerous to[] mention here." R. 709.

In opining on Plaintiff's ability to work, Dr. Kellam completed a form with checkboxes and fill-in-the-blank sections that allowed him to indicate whether the patient exhibited certain symptoms and the degree to which the patient experienced physical capacity restrictions. R. 709–11. From the form options, Dr. Kellam selected the following opinions: Plaintiff was unable to work full-time at any level of exertion, Plaintiff's fatigue was severe enough to "affect [her] concentration/memory and cause inability to focus and stay on task in a work setting," and Plaintiff would be off task for 50% of the day and 50% of the week ("off-task opinion"). R. 709–10. Dr. Kellam declined to indicate whether Plaintiff's fatigue would require "extra rest breaks causing [her] to be off task in a work setting more than one hour total during an 8-hour workday," writing on the side of the form, "probably – really have not addressed this." R. 709. He concluded that

---

[7]     Supraventricular tachycardia refers to an irregularly fast heartbeat that affects the upper chambers of the heart. *Supraventricular Tachycardia*, Mayo Clinic (Apr. 30, 2022), https://www.mayoclinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243.

Plaintiff's prognosis for recovery of function was "fair," but that he "doubt[ed] she'll improve" and that the described level of impairment "won't [change]." R. 711.

On the other hand, Dr. Kellam also indicated the following opinions on the form: Plaintiff would be able to sit for four hours and stand or walk ("slowly") for four hours during an eight-hour workday, Plaintiff would not require bedrest such that she "could not report to work periodically," and Plaintiff could lift up to 25 pounds occasionally. R. 710.

### 4. The ALJ's Assessment of Dr. Kellam's Opinion

The ALJ determined that Dr. Kellam's medical evaluation report was "not persuasive," finding that Dr. Kellam's opinion was "not supported by . . . [or] consistent with the evidence of record as a whole." R. 26. The ALJ noted inconsistencies within Dr. Kellam's opinions regarding the limitations on Plaintiff's ability to work. *Id.* The ALJ then stated that the opinion was "inconsistent with improvement in the claimant's symptoms, including headaches, the psychiatric portions of the physical examinations and neurological findings." *Id.* He explained that "the objective examinations since January 1, 2019, the alleged onset date, indicate mostly normal / mild / moderate findings overall." *Id.* The ALJ also summarized Plaintiff's recovery from her stroke, cesarean section, and seizure-like activity and noted that Plaintiff's "migraines have improved overall with fairly conservative treatment, including injections." *Id.* Despite finding Dr. Kellam's opinion unpersuasive, the ALJ concluded—based on his review of Dr. Kellam's opinion and other evidence in the record—that the Plaintiff had a residual functional capacity "to perform less than the full range of sedentary work," *id.*, which allows her to do sedentary work with significant limitations, R. 21.

# IV.    ANALYSIS

## A. Supportability

In the R&R, the Magistrate Judge concluded that the ALJ appropriately considered supportability in evaluating Dr. Kellam's opinions. Though the ALJ had "addressed supportability and consistency 'collectively,'" the Magistrate Judge concluded that "the path of the ALJ's reasoning [could] be traced" sufficiently for judicial review. R&R at 27. To begin, the Magistrate Judge observed that Dr. Kellam's lack of a supporting explanation "le[ft] Dr. Kellam's opinions about plaintiff's functional limitations . . . unconnected to any findings and tests arising from treatment." *Id.* at 25–26. Accordingly, the ALJ had "little to nothing to discuss aside from Dr. Kellam's bald conclusion that plaintiff could not perform full-time work"—a final determination that is "reserved for the Commissioner." *Id.* at 26. Next, the Magistrate Judge noted that the ALJ discussed the "uncertain and internally contradictory nature of Dr. Kellam's opinions," which further "detract[ed] from the supportability and persuasive impact of his opinions." *Id.* at 26–27. Finally, the Magistrate Judge pointed to the ALJ's "repeated[] and general[] cit[ations to] Dr. Kellam's treatment records" in the ALJ's discussion of the persuasiveness of Dr. Kellam's opinions. *Id.* at 27. The Magistrate Judge found that the evidence in the cited treatment records "run[s] counter to and cast[s] substantial doubt upon Dr. Kellam's unexplained opinions," such that "the ALJ's assertion that Dr. Kellam's opinions were not supported by the evidence of record rests upon a solid foundation." *Id.* at 29.

The Plaintiff objected to the Magistrate Judge's finding that the ALJ properly considered supportability. Pl.'s Obj. at 1–2. The Plaintiff claims that the ALJ's supportability analysis solely "consisted of a boilerplate statement claiming Dr. Kellam's opinion was 'not supported by the evidence of record as a whole.'" *Id.* at 2 (quoting R. 26). The Plaintiff argues that the Magistrate

Judge improperly engaged in *post-hoc* rationalization in finding the ALJ's supportability analysis sufficient, "rel[ying] on his own analysis of the opinion rather than the one produced by the ALJ." *Id.* Specifically, Plaintiff asserts that the Magistrate Judge relied upon the "lack of explanation on the part of Dr. Kellam" and "internal inconsistencies within the opined limitations," justifications which were absent from the ALJ's decision. *Id.*

The Court overrules this objection. Contrary to Plaintiff's objection, the Magistrate Judge did not engage in impermissible *post-hoc* rationalization of the ALJ's opinion. A reviewing court "must judge the propriety of [an agency's] action solely by the grounds invoked by the agency," rather than engaging in *post-hoc* rationalization. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). However, a Magistrate Judge does not engage in *post-hoc* rationalization when he does "not purport to provide *alternative* grounds to the ones provided by the ALJ for his findings," but rather "explain[s] the applicable legal standards in detail, review[s] the record, and determine[s] that there was, in fact, substantial evidence therein to support each of the ALJ's findings, however curt their formulation might have been." *See Shamlee v. Astrue*, No. 2:09CV290, 2010 WL 3187609, at *2 (E.D. Va. Aug. 11, 2010) (emphasis in original). This form of review "is precisely the task prescribed by 42 U.S.C. § 405(g)," *id.*, which mandates that the Commissioner's findings of fact are "conclusive" as long as they are "supported by substantial evidence," 42 U.S.C. § 405(g).

Here, the Magistrate Judge did not provide alternative explanations to show that Dr. Kellam's opinion was unsupported by the record. First, the Plaintiff argues that the Magistrate Judge relied on Dr. Kellam's lack of explanation even though the ALJ did not discuss this as a factor in finding a lack of supportability. Pl.'s Obj. at 2. However, this argument misconstrues the Magistrate Judge's opinion. The Magistrate Judge properly found that the ALJ's opinion, standing

alone, is sufficient to trace the reasoning of the ALJ's supportability analysis and is supported by substantial evidence in the record. *See* R&R at 26–29. But in her summary judgment motion, one of Plaintiff's key arguments was that the ALJ provided an inadequate explanation of supportability. Pl.'s Mem. L. Supp. Mot. Summ. J. ("Pl.'s Summ. J. Mem.") at 11. The Magistrate Judge noted Dr. Kellam's lack of explanation in addressing Plaintiff's contention that the ALJ's explanation was inadequate. *See* R&R at 25–26. The Magistrate Judge explained that the legal standard for addressing supportability is closely tied to the medical source's supporting explanation—an explanation which Dr. Kellam failed to provide in his medical evaluation report. *Id.* Without such an explanation, Dr. Kellam's "bare-boned and conclusory opinions did not lend themselves to meaningful review." *Id.* at 26. In this way, the Magistrate Judge's discussion of Dr. Kellam's lack of explanation responded to Plaintiff's argument that the ALJ did not give enough explanation of supportability and provided context for why the ALJ's level of analysis was sufficient to consider the supportability of Dr. Kellam's opinion. It was not an *alternate* basis for analyzing supportability from those invoked by the ALJ, as claimed by Plaintiff.

Plaintiff's second argument, that the Magistrate Judge engaged in post-hoc rationalization by discussing the internal inconsistencies within Dr. Kellam's opinion while the ALJ did not, also mischaracterizes the record. *Compare* R&R at 26 (noting the "internally contradictory nature of Dr. Kellam's opinions, as discussed by the ALJ") (citing R. 26), *with* R. 26 (setting forth inconsistencies within Dr. Kellam's medical evaluation report). In his opinion, the ALJ discussed these internal inconsistencies and uncertainties by comparing various statements of Dr. Kellam. R. 26. For example, the ALJ pointed out that "Dr. Kellam opined that fatigue prevents full time work" but, to the contrary, "that the claimant can sit four hours[,] stand or walk four hours[,] and lift up to 20 pounds" and "would not require bedrest." *Id.* Similarly, the ALJ noted that "Dr. Kellam

opined that the claimant can focus or stay on task 50% of a workday," but expressed uncertainty as to whether "the claimant required extra breaks during the workday." *Id.* The Magistrate Judge appropriately points to the ALJ's comparison of these inconsistent opinions because such internal contradictions are relevant to assessing the supportability and overall persuasiveness of Dr. Kellam's opinion, especially in light of the aforementioned lack of supporting explanation by Dr. Kellam himself. *See* R&R at 25–26. Indeed, the Magistrate Judge drew these internal contradictions from the ALJ's discussion; it was not an alternate supportability explanation devised by the Magistrate Judge.

Furthermore, the Magistrate Judge provided additional review of the ALJ's supportability analysis that also focused on bases articulated by the ALJ himself. *See Shamlee*, 2010 WL 3187609, at *2. For example, the Magistrate Judge reviewed the ALJ's statement that Dr. Kellam's off-task opinion was "at odds with" the improvement in the Plaintiff's symptoms and with the psychiatric and neurological findings during her examinations. R&R at 27. In support of his finding, the ALJ had "[c]it[ed] to exhibits 1F, 5F, and 10F – Dr. Kellam's treatment records." *Id.* Accordingly, the Magistrate Judge reviewed those records and determined that they provided substantial evidence in support of the ALJ's conclusion, citing to various findings and observations by Dr. Kellam that supported the ALJ's statement. *Id.* at 27–28.

Similarly, the Magistrate Judge looked to the ALJ's own explanation and citations in reviewing the ALJ's findings that the Plaintiff's physical symptoms did not support Dr. Kellam's opinion. *Id.* at 28–29. In his opinion, the ALJ acknowledged the Plaintiff's diagnoses, but found that the "mostly normal / mild / moderate findings" in her physical examinations, along with her recovery from stroke and post-birth complications, failed to support Dr. Kellam's assessment. R. 26. In support of his explanation, the ALJ cited to several of Dr. Kellam's records. *Id.* Accordingly,

the Magistrate Judge reviewed those records and noted the various findings of Dr. Kellam that supported the ALJ's statement. R&R at 28–29.

In short, the Magistrate Judge reviewed whether substantial evidence in the record supported the ALJ's explanations, as required by 42 U.S.C. § 405(g). Though the Magistrate Judge provided more detailed citations to the record than the ALJ, this was appropriate to analyze whether substantial evidence supported the ALJ's explanation. *See Shamlee*, 2010 WL 3187609, at *2. The Magistrate Judge did not engage in *post-hoc* rationalization simply because he showed his work in greater detail than the ALJ. *See id.* This objection is therefore overruled.

After reviewing the record, and for the reasons stated above, the Court finds that the Magistrate Judge applied the proper standard and that substantial evidence in the record supports the ALJ's conclusion that Dr. Kellam's opinion was not persuasive.

## B. Consistency

The Magistrate Judge also concluded that "[s]ubstantial evidence . . . supports the ALJ's determination that Dr. Kellam's opinions about plaintiff's fatigue and its effects were inconsistent with the record as a whole." R&R at 29. The Magistrate Judge observed that the Plaintiff's "reported bouts of fatigue and associated concentration and memory issues . . . mostly failed to substantially manifest themselves in the objective physical and mental status exam findings of other providers," as noted by the ALJ. *Id.* at 29. Furthermore, the Magistrate Judge found that the record supported the ALJ's statement that Dr. Kellam's off-task opinion was inconsistent with other providers' noted progress in treating her headaches and her lack of psychiatric treatment for her anxiety. *Id.* at 30–31. The Magistrate Judge concluded that the ALJ's findings likely differed from Dr. Kellam's opinions primarily because Dr. Kellam credited Plaintiff's self-reported symptoms more than the ALJ—symptoms that the ALJ had discussed extensively in reviewing the

Plaintiff's testimony. *Id.* at 31. Accordingly, the Magistrate Judge found that the ALJ's consistency analysis "finds ample support in the record." *Id.* After concluding that the ALJ had conducted a proper consistency analysis, the Magistrate Judge rejected Plaintiff's objection that the ALJ had cherry-picked the favorable findings from the record. *Id.* at 31–33. Contrary to the Plaintiff's claim that the ALJ ignored evidence from 2021 that her condition had not improved, the Magistrate Judge found that the ALJ had considered and discussed these records, including evidence of Plaintiff's persistent migraines. *Id.* at 32–33. Accordingly, the Magistrate Judge found that the Plaintiff's claims regarding inadequacies in the ALJ's reasoning were unpersuasive. *Id.* at 33.

First, the Plaintiff objects that the Magistrate Judge erred by discussing Dr. Kellam's records when reviewing the ALJ's consistency analysis, as "consistency is an *external* check that references evidence from *other medical and nonmedical sources*." Pl.'s Obj. at 3 (emphasis in original). The Court overrules this objection. The Magistrate Judge looked to external sources to conclude that the ALJ's consistency analysis was properly supported by substantial evidence. R&R at 29–31. The Magistrate Judge reviewed the ALJ's citations to the records of other treatment providers, including a physician assistant at Sentara Neurology Specialists, Dr. John Herre and Dr. Paul Mahoney of Sentara Cardiology Specialists, and Dr. Robert Paschall, Dr. Hugh Watkins, and Dr. Jennifer Reason of Riverside Shore Memorial Hospital, and concluded that they provided substantial support for the ALJ's consistency findings. *Id.* at 29–31. The Magistrate Judge also cited to the records of Sentara Neurology Specialists as supporting the ALJ's finding that Dr. Kellam's off-task opinion was inconsistent with the improvement in the Plaintiff's migraines. *Id.* at 30. In addition, the Magistrate Judge noted that the lack of "psychiatric hospitalizations, emergency psychiatric treatment, or other psychiatric treatment for anxiety" from providers other than Dr. Kellam supported the ALJ's conclusions that the Plaintiff's anxiety was relatively mild

or moderate. *Id.* at 30–31. Accordingly, the Magistrate Judge properly determined that the ALJ's consistency analysis had "ample support in the record," based on his review of the ALJ's citations to sources other than Dr. Kellam himself. *Id.* at 31.

The Magistrate Judge did not improperly confuse the consistency analysis when he referenced Dr. Kellam's own opinions. In her arguments before the Magistrate Judge, the Plaintiff argued that the ALJ had cherry-picked evidence in his consistency analysis, citing—among others—Dr. Kellam's treatment records as evidence of lack of improvement in her symptoms. Pl.'s Summ. J. Mem. at 12–13. When addressing the Plaintiff's argument, the Magistrate Judge noted that the Plaintiff's "invitation to scrutinize Dr. Kellam's treatment notes in attacking the ALJ's . . . . consistency analysis . . . arguably takes the Court away from the consideration of the relation between Dr. Kellam's *opinions* and *other medical and non-medical evidence*." R&R at 31 n.13. Having already reviewed *external* sources that supported the ALJ's consistency analysis, the Magistrate Judge nonetheless "endeavor[ed] to address plaintiff's challenge." *Id.* In reviewing the Plaintiff's cherry-picking argument, the Magistrate Judge thus considered each of the records cited by the Plaintiff, including her citations to the records of Dr. Kellam, to ensure that the Plaintiff's arguments were fully addressed. *See id.* at 31–33. Accordingly, the Plaintiff's objection that the Magistrate Judge "confuse[d] the issue" by citing to Dr. Kellam's own records in the consistency analysis is unavailing, as any confusion of the issue originates in her own arguments. Pl.'s Obj. at 3; *see* Pl.'s Summ. J. Mem. at 12–13.

Finally, the Plaintiff alleges that the Magistrate Judge "mischaracterized the record" in considering the arguments Plaintiff made before him that (1) the ALJ erred by indicating that her migraines had improved due to the nerve block injections and (2) the ALJ ignored evidence from 2021 that her symptoms had not improved. Pl.'s Obj. at 2–4; Pl.'s Summ. J. Mem. at 11–13.

Although the Plaintiff asserts the error lies with the Magistrate Judge, this objection just repeats the argument the Plaintiff made before the Magistrate Judge that the ALJ had misconstrued the record. *Compare* Pl.'s Obj. at 3–4, *with* Pl.'s Summ. J. Mem. at 11–13. Although the Court could treat such an argument as a failure to object and review for clear error, the Court will nonetheless address Plaintiff's argument. *See Lee v. Saul*, No. 2:18cv214, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019); *Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015). As correctly noted by the Magistrate Judge, the ALJ did not deny that the Plaintiff continued to experience headache symptoms; instead, he noted that the symptoms had "improved overall with fairly conservative treatment." R. 26; R&R at 33. The Court agrees with the Magistrate Judge that this conclusion finds ample support in the record. R. 270–71 (stating that Plaintiff's headache severity had improved by 80 to 90 percent); R. 279, 664, 654 (recording the Plaintiff's headache improvement); *see also* R. 281, 664, 654–55 (describing the Plaintiff's ongoing headaches and treatment). Regarding the Plaintiff's 2021 treatment, the ALJ did discuss the two visits that Plaintiff argues he did not consider, including the January 2021 emergency-room visit and the February 2021 office visit with Dr. Kellam. R. 24 (accurately describing the primary findings and diagnoses from the Plaintiff's January 2021 emergency-room visit and describing Dr. Kellam's progress notes from Plaintiff's February 2021 follow-up visit). Thus, neither the Magistrate Judge nor the ALJ cherry-picked evidence that supported a finding of non-disability, as argued by the Plaintiff.

In conclusion, the Magistrate Judge did not err in finding that the ALJ conducted a proper assessment of the consistency of Dr. Kellam's opinion with other sources. Therefore, Plaintiff's objection is overruled. Pl.'s Obj. at 2–4. Likewise, the Court finds that substantial evidence supports the ALJ's finding that Dr. Kellam's opinion was not persuasive.

## IV.    CONCLUSION

The Court adopts the Magistrate Judge's Report and Recommendation. Accordingly, this Court overrules Plaintiff's objections, grants the Commissioner's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

An appropriate order shall issue.

_____ /s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: September 28, 2023

19